**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BRENDA GRISSOM,** | |
| **Plaintiff,** | |
| v. | **Civil Action No.  11-1604 (JEB)** |
| **DISTRICT OF COLUMBIA,** *et al.*, | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

On September 8, 2010, Plaintiff Brenda Grissom triggered the alarm on a metal detector she was passing through while entering the Reeves Center in the District of Columbia.  Officer Rockwell Phillips, an employee of AlliedBarton Security Services who appeared to be following the instructions of District of Columbia Protective Services Police Officer Sharpe (Plaintiff has provided no first name), then proceeded to run a hand-held metal detector all over her body. While a crowd of people waiting to pass through security and other security officers looked on, Officer Phillips allegedly used the wand to repeatedly rub Grissom's genitals and instructed her to pull up her blouse.  After doing so, she was permitted to enter the building.

Plaintiff's Amended Complaint contends that both officers, AlliedBarton, and the District violated her First, Fourth, and Fifth Amendment rights, committed various common-law torts, and violated a D.C. law prohibiting public-accommodation discrimination.  The claims against Officer Phillips have been dismissed without prejudice for failure to effect service.  The District and Officer Sharpe have now filed a Motion to Dismiss, which Allied Barton has joined, contending that Plaintiff has failed to sufficiently plead her federal claims.  Although it finds that Plaintiff has not made out federal claims against the District and AlliedBarton, the Court

1

concludes that her Fourth and Fifth Amendment claims against Officer Sharpe in his personal capacity survive Defendants' Motion. It will therefore grant the Motion in part and deny it in part.

## I.     Background

According to her Amended Complaint, the veracity of which must be presumed for the time being, Grissom entered the Reeves Center on September 8, 2010. Am. Compl., ¶ 10. She was wearing "a pair of shorts with a buckled belt, a sleeveless blouse and open-toed sandals." Id., ¶ 11. Intending to visit the federal credit union on the second floor, Grissom triggered the alarm on the metal detector while passing through the building entry's security station. See id., ¶¶ 11-12. Working security at that time were Officer Sharpe, "a supervisor and member of the District of Columbia Protective Police Department," id., ¶ 7, and Officer Phillips, an employee of AlliedBarton Security Services – a corporation that provides security services at the Reeves Center under a contract with the District of Columbia. See id., ¶¶ 4, 6. "[O]ther unknown security and/or protective service officers" were also "standing at the security checkpoint and in the lobby." Id., ¶ 14.

Officer Phillips, who was standing next to Officer Sharpe and appeared to be receiving instructions from him, id., ¶ 13, instructed Grissom to hold out her arms and spread her legs. See id., ¶ 15. Officer Phillips then began to run a "wand" – presumably a hand-held metal detector – "across the front of her body, . . . across both of her arms[,] . . . down the front of her body, down the front of her legs inside and up touching her vaginal area, rubbing her genitals." Id., ¶ 16. After instructing her to turn around, he "continued with the same process across her arms and down her back and up her legs, again touching her vaginal area, rubbing her genitals and buttocks." Id., ¶ 17. By this point, a "crowd" of individuals waiting to proceed through security

had gathered and was watching.  See id., ¶ 18.  Grissom told the officers that she felt degraded and wanted Officer Phillips to stop, but the officers did not respond.  See id., ¶¶ 18-19.  "Officer Sharp [*sic*] then instructed Officer Phillips to have Plaintiff pull up her blouse.  In fear and apprehension, Plaintiff pulled up her blouse."  Id., ¶ 20.  There is no allegation as to whether such action exposed any of her flesh or undergarments.  She was then permitted to enter and walked away.  Id., ¶ 21.

Grissom filed a Complaint – which has since been once amended – initiating the instant suit on September 6, 2011.  Her Amended Complaint names as Defendants Officers Sharpe and Phillips in their individual and official capacities, AlliedBarton, and the District of Columbia.  Grissom seeks to recover for violations of her First, Fourth, and Fifth Amendment rights via 42 U.S.C. § 1983, see id., ¶¶ 22-37, as well as for various common-law torts and public-accommodation discrimination under the D.C. Human Rights Act.  See id., ¶¶ 38-68.  Because Plaintiff was unable to locate and serve Defendant Phillips, the case against him has been dismissed without prejudice.  See Minute Order, March 19, 2012.  The District of Columbia and Officer Sharpe have now filed a Motion to Dismiss under Rule 12(b)(6), which AlliedBarton has joined.  See Line of Defendant AlliedBarton Joining in Motion to Dismiss, ECF No. 14.  These Defendants contend that Plaintiff has failed to adequately state her federal claims and, as a result, that the Court lacks subject-matter jurisdiction over the remaining state-law claims.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted."  In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow

v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  The notice-pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and she must thus be given every favorable inference that may be drawn from the allegations of fact.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint.  Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)).  Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

## III.   Analysis

The instant Motion – originally filed by the District and Sharpe and later joined by AlliedBarton – seeks dismissal of Plaintiff's federal claims.  If the Court dismisses those claims, Defendants further argue, it must dismiss the remainder of the case for lack of subject-matter jurisdiction.  The Court will first address Defendants' argument that Plaintiff has failed to

adequately plead her federal causes of action.  After concluding that the only federal claims that

survive the instant Motion are Grissom's Fourth and Fifth Amendment claims against Sharpe in

his personal capacity, the Court will then address what is to be done with the state-law claims

that remain.  Because the state-law claims are "part of the same case or controversy," 28 U.S.C.

§ 1367(a), as the surviving federal claims, the Court ultimately will retain jurisdiction over the

entire case.

A.  <u>Federal Claims</u>

Plaintiffs' federal claims are brought under 42 U.S.C. § 1983.  Section 1983 provides for

a cause of action against:

> [e]very person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must plead facts sufficient to

establish 1) "the violation of a right secured by the Constitution and the laws of the United

States" and 2) "that the alleged deprivation was committed by a person acting under color of

state law."  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).  In addition, to hold a municipality liable

under § 1983, a plaintiff has to plead facts that demonstrate that the municipality's "policy or

custom" caused the constitutional injury.  <u>See</u> <u>Monell v. New  York City Dept. of Social Servs</u>,

436 U.S. 658, 694 (1978); <u>Connick v. Thompson</u>, 131 S. Ct. 1350, 1357-58 (2011); <u>Baker v.</u>

<u>District of Columbia</u>, 326 F.3d 1302, 1305 (D.C. Cir. 2003).

Grissom has pled – and Defendants do not appear at this juncture to dispute – that the

named Defendants, including the private Defendants, were acting under color of state law during

the incident in question.  The second element, accordingly, is not now at issue.  Rather, it is to

the sufficiency of Plaintiff's pleadings with respect to the first element and to municipal liability that the instant Motion is addressed.

Instead of proceeding claim-by-claim, however, the Court will evaluate Plaintiff's claims Defendant-by-Defendant, beginning with the District, then turning to AlliedBarton, and finally addressing the allegations against Officer Sharpe in both his official and individual capacities. Ultimately, only Plaintiff's Fourth and Fifth Amendment claims against Sharpe in his individual capacity survive the instant Motion.

### 1. *District of Columbia*

A municipality may not be held liable under § 1983 for the acts of its employees on a theory of *respondeat superior*.  See Monell, 436 U.S. at 691-92.  Instead, § 1983 only imposes liability on a municipality when its own illegal action – *i.e.*, "'action [taken] pursuant to official municipal policy'" – "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such a deprivation." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (quoting Monell, 436 U.S. at 691-92); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). In other words, "a municipality can be liable under § 1983 only where its policies [or customs] are the 'moving force [behind] the constitutional violation.'" City of Canton, Ohio v. Harris, 489 U.S. 378, 388-389 (1989) (quoting Monell, 436 U.S. at 694; Polk County v. Dodson, 454 U.S. 312, 326 (1981)).  This "affirmative link," City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985), between a municipal policy and a plaintiff's injury may take any of several forms:

> the explicit setting of a policy by the government that violates the Constitution, see Monell, 436 U.S. at 694–95; the action of a policy maker within the government, City of St. Louis v. Praprotnik, 485 U.S. 112, 123–30 (1988); the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become "custom," id. at 130; or the failure of the government to respond to a need (for example, training of employees) in such a manner as to

show "deliberate indifference" to the risk that not addressing the
need will result in constitutional violations, <u>Harris</u>, 489 U.S. at
390; <u>Daskalea v. Dist. of Columbia</u>, 227 F.3d 433, 441 (D.C. Cir.
2000).

<u>Baker</u>, 326 F.3d at 1306-07.

Here, Plaintiff has pled that the District's "customs and practices, such as encouraging

sexual misconduct by failing to adequately supervise, discipline or train its employees and/or

agents, that were in place enabled its agents and employees to act with deliberate indifference to

the constitutional rights of Plaintiff." Am. Compl., ¶ 24. She also avers that the District "had

actual notice and knowledge of Defendant[s] Phillips, Sharpe and AlliedBarton's noncompliance

with the program statements, policies and procedures and failed or otherwise refused to take

corrective or punitive action against said AlliedBarton and/or security officers/protective

officers." <u>Id.</u>, ¶ 29. She alleges that "it was and remains" the District's "custom, practice,

written and unwritten policy and procedure to knowingly permit Officers Phillips and Sharp to

unlawfully touch and sexually harass females during the search process." <u>Id.</u>, ¶ 30. At the same

time, she contends that "Defendant failed or otherwise refused to create, maintain and or enforce

written policies, procedures, practices and instructions relative to the proper and accepted

method of conducting a wand or pat down search." <u>Id.</u>, ¶ 33. For good measure, Plaintiff adds

that the District, along with AlliedBarton, "failed to perform proper and adequate criminal

background searches" on the individual Defendants and other employees. <u>Id.</u>, ¶ 31.

While Plaintiff may certainly plead alternative theories of liability – *e.g.*, that the

District's policy caused the alleged violations and that the District's failure to promulgate a

policy demonstrated deliberate indifference – these contentions are merely "legal conclusions

cast in the form of factual allegations." <u>Kaemmerling v. Lappin</u>, 553 F.3d 669, 677 (D.C. Cir.

2008). Plaintiff has not pled any facts that support an inference that the District's policy or

deliberate indifference caused the constitutional violations she alleges.  See Atchinson v. District of Columbia, 73 F.3d 418, 422 (D.C. Cir. 1996) ("section 1983 complaint alleging municipal liability must include some factual basis for the allegation of a municipal policy or custom").  If filling a Complaint containing the appropriate legal terms were sufficient, every plaintiff could state a claim against a municipality merely by throwing in the necessary keywords.  In order to state a claim against the District, Plaintiff must identify supporting facts, not simply restate the required elements.

The only facts Plaintiff  identifies are those relating to the single incident that forms the basis of her suit.  "[P]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy . . . ."  Tuttle, 471 U.S. at 823-24.  Though our Circuit has held that a plaintiff need not identify multiple instances of unconstitutional conduct in order to prove an unconstitutional municipal policy, see Atchinson, 73 F.3d at 423, she still "must include some factual basis for the allegation of a municipal policy or custom."  Id. at 422.  This is not, moreover, the unusual situation in which misconduct is "sufficiently serious and obvious" that the misconduct, "on its face, raises doubts about a municipality's training policies."  Id. at 422-23 (noting that it is "possible for a section 1983 plaintiff to satisfy Rule 8 by alleging both a failure to train and an unusually serious instance of misconduct" (emphasis added)).

Because Plaintiff has not identified facts sufficient to support her § 1983 claims against the District, therefore, the Court will grant its Motion with respect to those claims and dismiss them without prejudice.

2.  *AlliedBarton*

Although AlliedBarton has not filed its own Motion to Dismiss, it joined in the District's Motion and "incorporate[d] by reference the arguments raised" therein.  <u>See</u> Line of Defendant AlliedBarton.  While AlliedBarton may not be a municipality, the arguments the District raised concerning municipal liability are also relevant to AlliedBarton.  Specifically, just as the District can only be held liable under § 1983 for its own actions and not under a *respondeat superior* theory, so too can AlliedBarton only be held liable for constitutional violations affirmatively precipitated by its policy or practice.  <u>See</u> <u>Maniaci v. Georgetown Univ.</u>, 510 F. Supp. 2d 50, 62 (D.D.C. 2007) (collecting cases and explaining the applicability of <u>Monell</u> to claims against "private institutions" that "employ quasi-state actors"); <u>see also, e.g.</u>, <u>Sanders v. Sears, Roebuck & Co.</u>, 984 F.2d 972, 975–76 (8th Cir. 1993) ("[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies. The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983."); <u>Rojas v. Alexander's Dep't Store, Inc.</u>, 924 F.2d 406, 408–09 (2nd Cir.1990) ("Although <u>Monell</u> dealt with municipal employers, its rationale has been extended to private businesses."); <u>Iskander v. Forest Park</u>, 690 F.2d 126, 128 (7th Cir. 1982) ("[J]ust as a municipal corporation is not vicariously liable upon a theory of *respondeat superior* for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights."); <u>Powell v. Shopco Laurel Co.</u>, 678 F.2d 504, 505–06 (4th Cir. 1982) (private employer of security guard cannot be held liable on principle of *respondeat superior*).

For the same reason that it dismissed Plaintiff's § 1983 claims against the District, therefore, the Court will dismiss those claims against AlliedBarton.  The single incident of allegedly unconstitutional conduct and bald legal conclusions simply do not suffice to support an

inference that AlliedBarton's policy or other actions were responsible for the claimed constitutional violations.

### 3. *Officer Sharpe*

Having disposed of the § 1983 claims against the District and AlliedBarton, the Court now turns to Officer Sharpe, whom Grissom purports to sue in both his individual and official capacities. "A § 1983 suit for damages against municipal officials in their official capacities," however, "is . . . equivalent to a suit against the municipality itself." Atchinson v. District of Columbia, 73 F.3d 418, 424 (D.C. Cir. 1996). "'Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity[,]' courts routinely dismiss claims against the officials to conserve judicial resources when the entity itself is also sued." Trimble v. District of Columbia, 779 F. Supp. 2d 54, 58 n.3 (D.D.C. 2011) (quoting Robinson v. District of Columbia, 403 F. Supp. 2d 39, 49 (D.D.C. 2005)). The Court will thus dismiss Grissom's § 1983 claims against Officer Sharpe in his official capacity as redundant to her claim against the District.

The individual-capacity claims, however, remain. With respect to these claims, Sharpe's only argument appears to be that Plaintiff has not adequately pled the constitutional violations that underlie them. Specifically, he maintains that Grissom has failed to sufficiently plead each of the three constitutional violations on which she purports to base her § 1983 claims. Because Plaintiff expressly "concede[s] her First Amendment claim" in her Opposition to Defendants' Motion, see Opp. at 6, the Court will dismiss that claim with prejudice. The Fourth and Fifth Amendment claims, however, merit further discussion.

### a. Fourth Amendment

The Fourth Amendment requires the government to respect "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . ."  U.S. Const. amend. IV.  Sharpe contends that Grissom has failed to properly plead a Fourth Amendment violation because she was not <u>seized</u> within the meaning of the Amendment.  <u>See</u> Mot. at 10; Reply at 8.  This argument, however, does not respond to Grissom's allegation that she was unlawfully <u>searched</u>.  <u>Cf.</u> <u>Horton v. California</u>, 496 U.S. 128, 133 (1990) (distinguishing searches, which implicate "the individual interest in privacy," from seizures, which interfere with an individual's "dominion over his or her person or property").  Regardless of whether Grissom was seized at the Reeves Center, Sharpe does not appear at this juncture to seriously challenge her claim that she was subjected to a search. <u>Cf.</u> <u>Electronic Privacy Information Ctr. v. U.S. Dep't of Homeland Sec'y</u>, 653 F.3d 1, 10-11 (D.C. Cir. 2011) (use of advanced imaging technology at airport is search); <u>United States v. Epperson</u>, 454 F.2d 769, 770 (4th Cir. 1972) ("We agree that the use of the magnetometer in these circumstances was a 'search' within the meaning of the Fourth Amendment.").

The Fourth Amendment, however, does not prohibit all warrantless searches; it only prohibits <u>unreasonable</u> ones.  <u>See</u> <u>United States v. Proctor</u>, 489 F.3d 1348, 1352 (D.C. Cir. 2007); <u>Illinois v. McArthur</u>, 531 U.S. 326, 327 (2001).  The "unreasonableness" inquiry is a particularized one, taking into account the facts and circumstances of the particular case.  <u>See</u> <u>Proctor</u>, 489 F.3d at 1352 (citing <u>South Dakota v. Opperman</u>, 428 U.S. 364, 375 (1976)). In deciding whether Plaintiff has pled a Fourth Amendment violation sufficient to support her § 1983 claim, then, the Court must determine whether the facts alleged in her Complaint could support an inference that the search in this case was an unreasonable one.

Although it is a close question, in the absence of an argument by Sharpe concerning the reasonableness of the search to which Grissom was subjected, the Court cannot find as a matter of law that the search was reasonable.  If Grissom is able to provide evidence supporting her allegations that the magnetometer was used to rub her genitals and that the search continued after she asked the officers to stop, she might succeed in proving that the search was unreasonable under the circumstances.

Finally, Sharpe briefly suggests that Grissom cannot maintain her Fourth Amendment Complaint against him because he "was a security officer rather than a law enforcement official."  Mot. at 10.  Insomuch as Sharpe does not appear to contest Plaintiff's allegations that he was "a supervisor and member of the District of Columbia Protective Police Department" who "has police authority throughout the District of Columbia," Am. Compl., ¶ 7, however, the Court is not clear what is intended by this argument.  In any event, Plaintiff has pled that Officer Sharpe, who appears to be a police officer (unlike Officer Philips, who is an employee of AlliedBarton), acted "under color of state law" when he instructed Officer Philips to conduct the allegedly unconstitutional search. Id., ¶ 23.

The Court, therefore, concludes that Grissom's Fourth Amendment claim against Sharpe in his personal capacity survives Defendants' Motion to Dismiss, if just barely.

### b.  Fifth Amendment

Plaintiff's Complaint suggests that Defendants also violated her Fifth Amendment "due process and equal protection" rights.  Am. Compl., ¶ 37.  Her Complaint, however, provides no further details about the nature of any intended due-process claim.  Nor do her briefs, which include both an Opposition and a Surreply. Instead, Grissom's pleadings advance only a sex-

based equal-protection theory.  As Plaintiff has not articulated a due-process claim, it is thus

solely to the equal-protection question that the Court need turn its attention.

The Equal Protection Clause, which applies to the District of Columbia via the Fifth

Amendment, see Bolling v. Sharpe, 347 U.S. 497, 499 (1954) (applying Fourteenth

Amendment's Equal Protection Clause to D.C. through Fifth Amendment's Due Process

Clause); see also Dixon v. District of Columbia, 666 F.3d 1337, 1339 (D.C. Cir. 2011), requires

state actors to treat similarly situated persons alike.  See City of Cleburne v. Cleburne Living

Ctr., Inc., 473 U.S. 432, 439 (1985).  "Differential treatment on the basis of sex may violate the

Equal Protection Clause." Konah v. District of Columbia, 815 F. Supp. 2d 61, 73 (D.D.C. 2011)

(citing Williams v. District of Columbia, 916 F. Supp. 1, 6-7 (D.D.C. 1996)); see also, e.g., Reed

v. Reed, 404 U.S. 71 (1971); Califano v. Goldfarb, 430 U.S. 199 (1977).

Sharpe seeks to dismiss this claim solely on the ground that Plaintiff has "not plead [sic]

any discriminatory intent or disparate treatment."  Mot. at 7.  This, however, is not entirely

accurate.  Plaintiff states that Officer Phillips twice used the hand-held metal detector to "touch[

] her vaginal area" and "rub[ ] her genitals" as he ran the wand over her body, and also that she

was asked to "pull up her blouse."  Id., ¶¶ 16-17, 20.  That the genital touching, which she labels

"sexual misconduct," id., ¶ 24, was related to her sex is a fair inference.  She explicitly contends,

moreover, that the officers were "unlawfully touch[ing] and sexually harass[ing] females during

the search process," id., ¶ 30, and improperly searched "female individual [sic] particularly."  Id.,

¶¶ 30, 32 (emphasis added).

Plaintiff's allegations relating to her equal-protection claim are undoubtedly sparse.  Read

in the light most favorable to Plaintiff, however, they suffice to survive Defendants' Motion to

Dismiss.

B.  <u>Non-Federal Claims</u>

Only two federal claims thus remain: the Fourth and Fifth Amendment-based § 1983 claims solely against Officer Sharpe in his individual capacity.  Defendants' argument that the Court lacks subject-matter jurisdiction over Plaintiff's common- and local-law claims on the ground that she failed to establish any federal claim, <u>see</u> Mot. at 8-9, is, accordingly, moot.  The Court has federal-question jurisdiction over the § 1983 claims, <u>see</u> 28 U.S.C. § 1331; <u>John Doe v. Metropolitan Police Dept. of Dist. of Columbia</u>, 445 F.3d 460, 466 (D.C. Cir. 2006) ("[S]ection 1983 itself provides the basis for federal question jurisdiction under 42 U.S.C. § 1331 . . . ."), and has supplemental jurisdiction over the remaining claims because they are part of the same case or controversy.  <u>See</u> 28 U.S.C. § 1367(a).  The Court's supplemental jurisdiction, moreover, includes "claims that involve the joinder . . . of additional parties."  <u>Id.</u>; <u>see also</u> <u>ABF Freight System, Inc. v. International Brotherhood of Teamsters</u>, 645 F.3d 954, 963 (8th Cir. 2011) (as court had original jurisdiction over action against one defendant, it had supplemental jurisdiction over claims against another defendant "as the claims against all defendants arose from the same facts").

As a result, because federal claims remain and all of Plaintiff's non-federal claims are sufficiently interrelated, the Court retains jurisdiction over the entire suit. As Defendants have proffered no arguments regarding the merits of those common-law claims, they will remain to be decided in subsequent proceedings.

## IV.    Conclusion

The Court, accordingly, will issue a contemporaneous Order consistent with this Memorandum Opinion, which will dismiss all federal claims against all Defendants, with the

exception of Plaintiff's § 1983 claims based on the Fourth and Fifth Amendments against Officer

Sharpe in his individual capacity.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  April 6, 2012